JENNIFER FRIEHE, APPELLEE, V. ROBERT J. SCHAAD, APPELLANT.

545 N.W.2d 740

Filed April 12, 1996.   No. S-95-523.

Michael J. Murphy, of Angle, Murphy, Valentino & Campbell, P.C., for appellant.

Michael C. Washburn, of Erickson & Sederstrom, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

Appellee, Jennifer Friehe, filed an action for declaratory judgment in the district court for Hall County seeking

termination of the parental rights of putative father, Robert J. Schaad, to the minor child, Seth Daniel Friehe, and seeking the right to singularly execute and enforce a relinquishment of rights for purposes of adoption. Friehe asserted that since Schaad had not filed a notice of intent to claim paternity within 5 days of the child's birth, as required by Neb. Rev. Stat. §§ 43–104.02 and 43–104.04 (Reissue 1993), Schaad's consent to relinquishment was unnecessary. In response, Schaad challenged the constitutionality of §§ 43–104.02 and 43–104.04 as applied to him, asserting that these statutes, as applied in this case, violate the Equal Protection and Due Process Clauses of the 14th Amendment of the U.S. Constitution and Neb. Const. art. I, § 3. The district court upheld the constitutionality of the statutes as applied in this case and entered an order allowing Friehe to execute a valid relinquishment and consent and to proceed to adoption, without the necessity of Schaad's consent or relinquishment. Schaad appealed to the Nebraska Court of Appeals, and this case was transferred to our docket in order to regulate the caseloads of the appellate courts. We hold that §§ 43–104.02 and 43–104.04 are constitutional as applied in this case and affirm the declaratory judgment of the district court.

## FACTUAL BACKGROUND

Jennifer Friehe and Robert J. Schaad began dating in November 1992 and continued their relationship until approximately March or April 1994. The parties engaged in sexual relations at least as late as March 1994, and there is no dispute that Schaad is the father of the child in question. Friehe gave birth to Seth Daniel Friehe the evening of June 15, 1994. Schaad was notified by telephone of the birth on June 16; this was his first knowledge of the pregnancy and resulting birth. Friehe alleges that she herself was unaware of the pregnancy until the day of birth, when she went to the doctor complaining of flu–like symptoms and was informed that she was in labor.

On June 16, the day following the birth, Schaad traveled to the Friehe home where he was informed by Friehe's parents that Friehe was contemplating adoption. Schaad also visited Friehe in the hospital on this day and was again informed that Friehe was considering adoption; however, Friehe expressed a desire

that the parties make a joint decision. Schaad did not dispute the possibility of adoption at that time, but requested more time to make a decision. On June 16, Schaad did not go to the hospital to visit the child, but observed the child during feeding while in Friehe's room.

Over the next few days, numerous discussions occurred between Friehe, Schaad, and their respective parents, in which Schaad indicated a desire to raise the child, and Friehe indicated that her first choice remained adoption. Schaad visited the child at the hospital on an infrequent basis. No immediate agreement could be reached by the parties; however, on June 18, the parties reached a consensus to postpone a final decision concerning adoption for at least 1 week and to place the child in temporary foster care in the meantime through Nebraska Children's Home Society, a licensed Nebraska adoption and foster care agency.

On June 19, the child was placed in temporary foster care. Schaad did not file a notice of intent to claim paternity by June 20, 5 days after the child's birth. There is no evidence that either party was aware of the 5-day filing requirement as of June 20. However, on June 21, Schaad contacted an attorney and was informed of the 5-day filing rule, which had already passed. Schaad did not file a notice of intent to claim paternity at that time, but continued to try and work things out with Friehe. One week later, an agreement had still not been reached between the parties, and a final decision was indefinitely postponed. Friehe then left town to visit relatives in Colorado. At least one letter was exchanged between the parties during this time, in which Friehe clearly indicated her preference for adoption.

On July 6, after returning from out of town, Friehe informed Schaad of her decision to place the infant for adoption. Schaad then filed two notices of intent to claim paternity of the infant with the Nebraska Department of Social Services. The first notice, dated July 10, was handwritten, while the second, dated July 14, was executed on the state-prepared form. In late July 1994, the adoption placement agency was changed upon request of the Nebraska Children's Home Society to Lutheran Family Services; however, the foster home of the child has remained unchanged. The child remains in temporary foster care.

On September 14, Friehe filed a petition for declaratory judgment in the district court for Hall County seeking a determination of the respective rights of the parties and asserting that Schaad's rights in regard to the adoption were terminated by his failure to comply with §§ 43–104.02 and 43–104.04. In response, Schaad asserted that these statutes are unconstitutional as applied to him and that Friehe was equitably estopped from claiming the protection of these statutes as a result of fraudulent misrepresentations. Specifically, Schaad alleged that Friehe was equitably estopped from relying on §§ 43–104.02 and 43–104.04 because Friehe intentionally hid the fact of her pregnancy from Schaad and intentionally entered into the agreement on June 18 to postpone the adoption decision in an attempt to prevent Schaad from exercising his right to file a notice of intent to claim paternity within the 5–day period.

The Attorney General was properly served with notice of the constitutional issues in this case. The parties stipulated to submission of the matter on pleadings, depositions, affidavits, exhibits, and written arguments. The district court found the statutes constitutional and applicable, and ordered that a relinquishment executed by Friehe alone would be valid for purposes of the adoption. Schaad appeals from this declaratory judgment.

Schaad alleges that in addition to the oral expression of his intent to raise the child and his attempt to establish a close relationship with the child, he has acted financially responsible in offering to pay Friehe's medical expenses of the birth, although such offer was refused by Friehe's father. This offer of payment is undisputed. Because of these actions, Schaad asserts that termination of his parental rights by operation of §§ 43–104.02 and 43–104.04 would unconstitutionally violate his rights to due process and equal protection under the law.

## ASSIGNMENTS OF ERROR

Schaad asserts that the district court erred in (1) not finding §§ 43–104.02 and 43–104.04 violative of a putative father's rights of due process and equal protection guaranteed by the 14th Amendment to the U.S. Constitution and (2) not applying the doctrine of equitable estoppel to prevent the termination of

the rights of a putative father where the father has in good faith relied to his detriment on the false and misleading representations of the mother.

## STANDARD OF REVIEW

Whether a statute is constitutional is a question of law on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. *State v. Kelley, ante* p. 99, 541 N.W.2d 645 (1996); *Kuchar v. Krings,* 248 Neb. 995, 540 N.W.2d 582 (1995). When passing on the constitutionality of a statute, an appellate court begins with a presumption of validity, and the burden of demonstrating a constitutional defect rests with the challenger. *Chrysler Motors Corp. v. Lee Janssen Motor Co.,* 248 Neb. 322, 534 N.W.2d 309 (1995); *Village of Brady v. Melcher,* 243 Neb. 728, 502 N.W.2d 458 (1993).

Claims of equitable estoppel and fraudulent misrepresentation rest in equity. In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Whitten v. Malcolm, ante* p. 48, 541 N.W.2d 45 (1995); *City of Lincoln v. Townhouser, Inc.,* 248 Neb. 399, 534 N.W.2d 756 (1995).

## ANALYSIS

*Constitutionality.*

Section 43–104.02 provides:

(1) Relinquishment or consent for the purpose of adoption given only by a mother of a child born out of wedlock pursuant to section 43–104 shall be sufficient to place the child for adoption and the rights of any alleged father shall not be recognized thereafter in any court unless the person claiming to be the father of the child has filed with the Department of Social Services on forms provided by the department, within five days after the birth of such child, a notice of intent to claim paternity.

(2) The notice shall contain the claimant's name and address, the name and last–known address of the mother, and the month and year of the birth or the expected birth of the child.

Additionally, § 43–104.04 provides:

> If a notice of paternity is not filed within five days, the mother of a child born out of wedlock or an agent specifically designated in writing by the mother may request, and the Department of Social Services shall supply, a certificate that no notice of intent to claim paternity has been filed with the department and the filing of such certificate pursuant to section 43–102 shall eliminate the need or necessity of a consent or relinquishment for adoption by the natural father of such child.

Schaad does not assert that these statutes are facially unconstitutional. Rather, Schaad asserts that these statutes are unconstitutional as applied in this case.

This court first addressed the issues of equal protection and due process in the context of the 5–day filing requirement of §§ 43–104.02 and 43–104.04 in *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986). In *Shoecraft*, the putative father was aware of the pregnancy at least 7 months before the birth of the child and was aware of the possibility of adoption some $3^1/_2$ to 4 months before birth. The father continued to have contact with the mother during the pregnancy, but he did not offer to pay any expenses associated with the pregnancy or birth. The father was notified of the birth on the date of birth and was aware of the mother's execution of a relinquishment for purposes of adoption. The father did not execute a consent to the adoption or participate in the relinquishment. The father also did not file a notice of intent to claim paternity until 9 days after the birth of the child.

We acknowledged in *Shoecraft* that the 5–day filing requirement raised questions of equal protection because it treated unwed mothers and fathers differently, providing for automatic parental rights for unwed mothers while unwed fathers were required to file a notice of intent to claim paternity within 5 days of birth in order to obtain, or retain, any rights with regard to adoption and the child's welfare. However, in *Shoecraft*, we upheld the constitutionality of the statutes in question as applied to that case, utilizing a strict scrutiny analysis. This court, in *Shoecraft*, held that the father had

sufficient notice of the birth and that the disparate classification was justified because it served the compelling state interest of protecting the well–being of all children. Specifically, in *Shoecraft*, we noted that the limited 5–day filing period was justified given the interest of the government in expedient adoptions, which serve the best interests of the child. This court further stated that the case before it was clearly different from the case of a separated or divorced father, since the father in *Shoecraft* had not established a relationship with the child and, therefore, less protection of the father's rights was justified. Nevertheless, this court in *Shoecraft* recognized the possibility that the 5–day notice period may be constitutionally violative in a case where the father was not notified of the birth.

We again addressed the constitutionality of § 43–104.02 in *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987). In that case, the putative father lived with the mother prior to birth and was aware of the pregnancy. After the birth, the father's name was placed on the birth certificate, and the father, mother, and child lived together for 19 months. During this time, the father provided support for both the mother and child. The mother then left with the child to live with a friend and subsequently moved in with a new boyfriend. The father continued to maintain contact with the child, although such contact was limited by the mother's efforts to prevent the father from seeing the child. The father also continued to provide basic necessities for the child while the child was visiting relatives who allowed him access to the child. Approximately 2 years 1 month after the child's birth, the mother placed the child for adoption without the father's knowledge. The child remained with foster parents for a few weeks and was then placed with the adoptive parents. The father learned of the adoption some 3 months later, at which time he obtained an attorney and filed a notice of intent to claim paternity. The father appeared at the adoption proceedings to contest the adoption, asserting that Neb. Rev. Stat. §§ 43–104.02 et seq. (Reissue 1984) were unconstitutional on their face and as applied in that case.

This court in *In re Application of S.R.S. and M.B.S.* upheld the statutes as facially constitutional. However, we held that the

statutes in question were unconstitutional as applied to that case, using a strict scrutiny analysis, because requiring the father to comply with the 5–day filing requirement did not serve the interests of the state of protecting the best interests of children where the father had developed a substantial familial bond with the child prior to the adoption.

*Equal Protection Analysis.*

At this juncture, we note that the fact situation in the present case appears more similar to that of *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986), than that of *In re Application of S.R.S. and M.B.S., supra*, in that the father in this case does not possess an established familial bond with the child in question. However, rather than applying the very same analysis as *Shoecraft*, we wish to clarify the type of constitutional test that will be applied in equal protection cases involving gender–based claims.

For purposes of our equal protection analysis, the classification involved in this case is gender based, that is, the statutes in question treat unwed mothers and unwed fathers differently, and it is on this basis that the statutes are challenged. The U.S. Supreme Court has held that gender classification is subject to intermediate scrutiny, requiring that gender–based distinctions must serve important governmental objectives and must be substantially related to achievement of those objectives. See *Caban v. Mohammed*, 441 U.S. 380, 99 S. Ct. 1760, 60 L. Ed. 2d 297 (1979) (citing *Craig v. Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976)) (stating that gender–based distinctions must serve important governmental objectives and must be substantially related to those objectives, as opposed to strict scrutiny test of a compelling state interest and necessary or least restrictive means). See, also, *Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 468, 101 S. Ct. 1200, 67 L. Ed. 2d 437 (1981) (explaining that Supreme Court has not held gender–based classifications to be " 'inherently suspect' " and thus does not apply " 'strict scrutiny' " to those classifications, but, rather, proper analysis lies in between rationality test and strict scrutiny test). Therefore, to the extent we implied in

*Shoecraft* that gender classification was a suspect classification entitled to strict scrutiny, we now modify our test to that of intermediate scrutiny in cases that involve gender–based equal protection claims.

Furthermore, although the relationship between parent and child is always constitutionally protected, the U.S. Supreme Court cases indicate that the degree of protection and, therefore, the level of scrutiny applied by the Court depend on the nature of the right involved and the nature of the parental relationship itself, that is, whether it is a parental relationship consisting only of a biological link or an established familial bond with all its inherent responsibilities. Compare *Skinner v. Oklahoma*, 316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655 (1942) (involving forced sterilization and stating that rights of marriage and procreation are fundamental rights justifying strict scrutiny analysis); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) (involving free exercise of religion clause and holding that right to choose religious upbringing of children is fundamental right entitled to strict scrutiny); and *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) (dealing with right to educate children as parents see fit), with *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983) (distinguishing between mere biological link and established familial relationship and stating that former is entitled to less constitutional protection; ultimately applying intermediate scrutiny to analyze putative father's right to intervene in adoption proceedings). See, also, *Caban v. Mohammed, supra* (applying intermediate scrutiny to analyze disparate treatment of unwed mother and unwed father under adoption laws). A strict scrutiny analysis is not applicable per se because a case involves parental rights.

In the instant case, as in the U.S. Supreme Court case of *Lehr v. Robertson, supra*, we are not dealing with the constitutionality of terminating an established familial bond, but, rather, with the constitutionality of terminating the opportunity to form such bond. To such a situation, the Supreme Court has applied an intermediate scrutiny test. *Id.* (setting forth intermediate scrutiny test of important governmental objective and substantially related means).

Therefore, we conclude that the appropriate test to be applied in this case is intermediate scrutiny for purposes of our equal protection analysis.

It is not disputed that the statute at issue treats Friehe and Schaad disparately. However, disparate treatment of individuals does not make statutes unconstitutional per se. If there is a proper showing that there exists a substantial relation between the disparate treatment of this unwed mother and unwed father and an important governmental objective, then §§ 43-104.02 and 43-104.04 would not be unconstitutional as applied.

The state's asserted interest sought to be served in the present case is to protect the well-being of all children and to ensure their proper care and nurture. We accept that this is an important governmental objective. See *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986) (accepting it as even a "compelling" governmental objective). The state has an important interest in protecting the needs and interests of children of both wed and unwed parents.

However, it must be further determined if the disparate treatment of unwed mothers and unwed fathers in the context of this case is substantially related to the end of protecting the best interests of children. We hold that the means of the state employed in this case, that of requiring a putative father to file a notice of claim of paternity within 5 days of birth in order to assert rights, is substantially related to protecting the best interests of children on the facts of this case. The interest of the state is not mere convenience or expediency, which, of themselves, would not be enough to form a substantial relation. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). Rather, the state seeks to protect the interests of children born out of wedlock by providing a mechanism for speedy transfer, while allowing the putative father some time to exercise his rights. Some finality for the transfer of children to adoptive parents must be achieved. The 5-day period employed in §§ 43-104.02 and 43-104.04 was selected as a legitimate amount of time in which a child would be in the hospital with the mother and in which the father could determine his intentions to the child. See Judiciary Committee Hearing, L.B. 224, 84th Leg., 1st Sess. 2 (Jan. 29, 1975) (statement of

Senator Anderson). In this way, the mother, father, and, most importantly, the child, are not left in limbo during an extensive period. It is in the best interests of the child to allow the transfer to a loving adoptive family as soon as possible after birth. This is not to say that no time should be allotted to a putative father to assert his rights; certainly some time should be provided, and is, under the statutes at issue.

Furthermore, the putative father's ignorance of the 5-day period is no excuse. We are not dealing here with a case where the father did not know of the birth of the child within the 5-day period and, therefore, did not have an opportunity to exercise his rights. Although Schaad did not know of the pregnancy, as did the father in *Shoecraft*, Schaad did know of the birth, and it is this knowledge, not that of the pregnancy, which is important for purposes of the statutes. There is also no evidence that anything was done by Friehe or others to prevent Schaad from exercising his rights within the statutory period. In fact, from the day after the birth, Schaad was aware of Friehe's intentions to place the child for adoption and of her unwillingness to waver from this position. Schaad had opportunity to exercise his rights under the statute but failed to do so. In fact, even after Schaad learned of the 5-day period, he did not file a notice of intent to claim paternity until over a month later. We, therefore, hold, under the facts of this case, where the putative father had sufficient notice of the birth and had not developed a substantial familial bond with the child prior to the proposed adoption, that §§ 43-104.02 and 43-104.04, as applied, do not violate Schaad's rights to equal protection of the law under the 14th Amendment to the U.S. Constitution.

*Due Process Analysis.*

Schaad does not assert any substantive due process claims. Rather, his claims as to due process involve only procedural due process. Procedural due process limits the ability of the government to deprive people of interests which constitute " 'liberty' " or " 'property' " interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be

heard. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). This case does not involve a due process "property" interest. However, it is asserted that this case involves a constitutionally protected "liberty" interest.

On the issue of the nature of the liberty interest involved in this case, once again, the Supreme Court case of *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983), is instructive. The Supreme Court has held that an established familial relationship, and the duties consequent therein, are liberty interests entitled to substantial due process protection. See, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (holding that parents have protected liberty interest in the way they choose to educate their children); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) (holding that parents have protected liberty interest in controlling education of their children); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) (holding that parents have protected liberty interest in controlling religious upbringing of their children); *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972) (holding that father had protected liberty interest in maintaining established custody of children, and stating that father was entitled to hearing on his fitness as parent prior to termination of custody).

However, the liberty interest involved in this case does not involve termination of established custodial rights or the liberty of parents to control the upbringing of children in their custody. The liberty interest involved in this case is the liberty of a putative father to potentially form a familial bond with his child. See *Lehr v. Robertson, supra.* In such a situation, the Supreme Court has stated: "The Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights." 463 U.S. at 265.

Under the facts of the present case, we hold that Schaad was provided adequate notice of the birth of the child and was given adequate opportunity to exercise his rights and be heard. Schaad was provided notice of the birth within the statutory filing

period. In fact, but for the fact that he was not home the night of the birth, he would have received notice immediately after the birth occurred, which appears to be as much notice as anyone received under these circumstances. Furthermore, pursuant to the statutory procedures, Schaad had it within his own power to assert his rights and obtain an opportunity to be heard by filing a notice of intent to claim paternity. His own failure to act upon the notice given to him deprived him of the opportunity to be heard. Schaad's procedural due process claim under either the U.S. Constitution or the Nebraska Constitution is without merit.

*Equitable Estoppel.*

The doctrine of equitable estoppel applies where, as a result of conduct of a party upon which another person has in good faith relied to his detriment, the acting party is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed. *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794 (1994).

Schaad has asserted that Friehe should be equitably estopped from relying on §§ 43-104.02 and 43-104.04 due to her actions to intentionally mislead Schaad. Specifically, Schaad asserts that Friehe intentionally hid her pregnancy from him and intentionally postponed a decision as to the adoption in order to prevent Schaad from exercising his rights under the statutes at issue. We find no merit in these assertions. There is no evidence that Friehe intentionally hid her pregnancy from Schaad, and Schaad admits this in his deposition. Furthermore, there is no evidence that Friehe intentionally postponed a decision as to the adoption until after the statutory period in order to prevent Schaad from exercising his rights. Both parties mutually agreed to postpone a decision beyond 5 days after the birth. Also, as there is no evidence that either party was aware of the 5-day filing requirement until after such period had passed, there can be no intent to prevent Schaad from complying with this unknown requirement. Therefore, we find that Schaad's claims for equitable estoppel are without factual support, and Friehe is not estopped from relying on §§ 43-104.02 and 43-104.04.

## JUDGMENT

Accordingly, we hold that §§ 43-104.02 and 43-104.04 are constitutional as applied to Schaad in this case, and the judgment of the district court is therefore affirmed.

AFFIRMED.

WHITE, C.J., concurs.