IN RE ADOPTION OF BABY GIRL H.
K.D.G. AND T.S.G., APPELLEES, V.
LUKE ARMOUR, APPELLANT.
635 N.W.2d 256

Filed November 2, 2001.   No. S-00-1104.

Michael J. Synek for appellant.

Sally A. Rasmussen, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and MOORE, Judge.

CONNOLLY, J.

Neb. Rev. Stat. § 43-104.05 (Reissue 1998) requires a putative father to file a petition for adjudication of paternity in county court within 30 days of filing a notice of intent to claim paternity in order to preserve his rights to notice of adoption proceedings. See *Armour v. L.H.*, 259 Neb. 138, 608 N.W.2d 599 (2000). Appellant, Luke Armour, the putative father of Baby Girl H., filed a petition for adjudication of paternity in the

district court, which was the wrong court. The district court dismissed the petition for lack of jurisdiction. In the present adoption proceedings, the county court determined that because Armour filed in the wrong court, he had not complied with the provisions of § 43-104.05. As a result, the court determined Armour was not entitled to further notice in adoption proceedings involving the child.

On appeal, Armour argues that the application of the adoption statutes to his case violate his rights to due process and equal protection and that the statutes are facially unconstitutional. We determine that the statutes at issue are constitutional and did not deprive Armour of his constitutional rights as applied. We affirm.

## BACKGROUND

On August 3, 1998, Armour received a letter by registered mail from a counselor at Lutheran Family Services. The letter stated that L.H., a person with whom Armour had been sexually active, had given birth to a child on July 22, 1998, and was planning to relinquish the child for adoption. The letter advised that Armour had been identified as a possible biological father and informed Armour that he could: "a. Deny paternity; b. Waive any paternal rights [Armour] may have; c. Join in the relinquishment and consent to adoption; or d. File a notice of intent to claim paternity and obtain custody of the child." The letter advised Armour that if he wished to establish his rights as the biological father, he must file a notice with the biological father registry maintained at the Nebraska Department of Health and Human Services within 5 days of receipt of the letter. The letter further advised Armour that if he wished to pursue custody of the child, he should seek counsel from an attorney immediately. At the time Armour received the letter, he was an unemancipated minor and was living with his parents.

Armour filled out a form entitled "Notice of Intent to Claim Paternity and Obtain Custody," in which he stated his intention to obtain custody of the child. He further acknowledged his liability for contribution to support the child and pay for pregnancy-related expenses of the mother. The form was faxed to the appropriate department on August 4, 1998. A portion of the notice stated:

I understand that if a petition is not filed in the county court in the county of residence of said child for an adjudication of my claim of paternity and right to custody within thirty (30) days after the filing of this notice, my consent to the adoption of said child shall not be required and any alleged parental rights of mine shall not be recognized thereafter in any court.

Armour hired legal counsel, and on August 21, 1998, a petition for determination of paternity and custody was filed in district court. The petition named L.H. as a party and stated that it was filed according to § 43-104.05. K.D.G. and T.S.G. sought to intervene as the prospective adoptive parents. On September 22, L.H. filed a demurrer on the basis that the district court lacked subject-matter jurisdiction, and Armour later filed a motion for visitation pending final hearing.

Without ruling on the petition in intervention or motion for visitation, the district court entered an order dismissing the petition for lack of jurisdiction. We dismissed Armour's appeal, holding that the procedure for adjudicating paternity under § 43-104.05 falls within the exclusive jurisdiction of the county court, or in certain circumstances, the separate juvenile court. *Armour v. L.H.*, 259 Neb. 138, 608 N.W.2d 599 (2000). On June 23, 2000, the district court dismissed the petition pursuant to the mandate.

On July 17, 2000, K.D.G. and T.S.G. filed a petition for adoption in the county court. The petition asserted that Armour had been given proper notice of his rights and that he had failed to file a petition for an adjudication of paternity within 30 days of filing notice of intent to claim paternity with the Department of Health and Human Services as required by § 43-104.05. The record shows that Armour was served with a copy of the petition.

K.D.G. and T.S.G. also filed a motion seeking a determination that Armour's consent to the adoption was not required and that he was not entitled to further notice in the proceedings. Armour appeared without counsel and requested a continuance because the attorney he had planned to hire had a conflict of interest. The county court ruled in favor of K.D.G. and T.S.G., but later granted Armour's motion for a rehearing.

At the hearing, Armour testified that L.H. informed him of her pregnancy when she called him in June or July 1998, shortly

before she gave birth. Armour contended that because he was a minor, he received insufficient notice of his rights from Lutheran Family Services. Armour also argued that any action to preclude him from receiving notice of, and participating in, the adoption proceedings would deprive him of procedural and substantive due process under the U.S. and Nebraska Constitutions. Armour then argued that the statutory scheme at issue was unconstitutional.

On September 19, 2000, the county court determined that Armour did not properly file a petition for adjudication of paternity in accordance with § 43-104.05 and was not entitled to any further notice in the adoption proceedings. On September 21, K.D.G. and T.S.G. adopted the child. Armour appeals.

## ASSIGNMENTS OF ERROR

Armour assigns, rephrased, that the county court erred in (1) determining that he was not entitled to further notice in the adoption proceedings; (2) determining that he did not have any rights that were required to be recognized in the adoption proceedings; (3) depriving him of his constitutional rights, particularly substantive and procedural due process under the U.S. and Nebraska Constitutions; (4) rendering an adoption decree contrary to statutory provisions; and (5) failing to dismiss the adoption petition for failure of proof and lack of jurisdiction. Armour further assigns that Neb. Rev. Stat. §§ 43-101 to 43-116 (Reissue 1998), especially §§ 43-104.05, 43-104.13, and 43-104.22, violate the U.S. and Nebraska Constitutions on their faces.

## STANDARD OF REVIEW

■ In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. *Airport Auth. of Village of Greeley v. Dugan*, 259 Neb. 860, 612 N.W.2d 913 (2000).

■ Whether a statute is constitutional is a question of law; accordingly, this court is obligated to reach a conclusion independent of the decision reached by the court below. *Parnell v. Good Samaritan Health Sys.*, 260 Neb. 877, 620 N.W.2d 354 (2000); *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000).

## ANALYSIS

### CONSTITUTIONALITY OF ADOPTION STATUTES AS APPLIED

Armour contends that the application of the adoption statutes to his case denied him due process. Armour argues that because he filed a notice of intent to claim paternity within 5 days under § 43-104.02, applying § 43-104.05 deprives him of his constitutionally protected interest of parenting his child.

At the time Armour filed his petition for adjudication of paternity in district court, § 43-104.05 provided in part:

> If a notice of intent to claim paternity and obtain custody is timely filed with the biological father registry pursuant to section 43-104.02, either the claimant-father, the mother, or her agent specifically designated in writing shall, within thirty days after filing the notice, file a petition in the court in the county where such child is a resident for an adjudication of the claim of paternity and right to custody. If such a petition is not filed within thirty days after filing the notice, the claimant-father's consent to adoption of the child shall not be required and any alleged parental rights of the claimant-father shall not be recognized thereafter in any court.

Section 43-104.22 provided:

> The court shall determine that the biological father's consent is not required for a valid adoption of the child upon a finding of one or more of the following:
>
> . . . .
>
> (7) The father failed to timely file a petition to adjudicate his claim of paternity and right to custody as contemplated in section 43-104.05[.]

This court has not addressed whether § 43-104.22 can violate due process as applied. The U.S. Supreme Court has long recognized that state intervention in a parent-child relationship is subject to constitutional oversight. See, e.g, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 2d 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 2d 1042 (1923). The Court has held that an established familial relationship is a liberty interest entitled to substantial due process protection. *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983). But the Court has made clear

that "the mere existence of a biological link does not merit equivalent constitutional protection." 463 U.S. at 261. The Court explained that the protection given to the familial relationship stems from the emotional attachments that derive from the intimacy of daily association. Thus, when a biological father has not taken the opportunity to form a relationship with his child, the constitution does not afford him an absolute right to notice and opportunity to be heard before a child may be adopted. As the Court explained:

> The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie.

463 U.S. at 262.

In *Lehr*, the putative father of a child born out of wedlock never supported the child and failed to enter his name in his state's "putative father registry," 463 U.S. at 251, which would have entitled him to notice of any adoption proceedings. When the child was over 2 years old, the biological mother and her husband filed a petition for adoption and an order of adoption was entered. The biological father sought to vacate the adoption, arguing that the requirement that he file notice with the putative father registry in order to be given notice of the adoption violated his constitutional rights. The U.S. Supreme Court held that the putative father failed to grasp any opportunity interest he had in raising his child. In reaching this conclusion, the Court stated that it was concerned only with whether the state had adequately protected the putative father's opportunity to form a relationship with his child. The Court held that the putative father registry protected that right and further stated that the possibility that the father failed to use the registry because of his ignorance of the law could not be a sufficient reason for criticizing the law itself.

In Nebraska, a putative father is required under § 43-104.02 to file a notice of intent to claim paternity within 5 days of either the child's birth or receiving notice from an agency or attorney of the birth. Under § 43-104.04, if the putative father fails to file such a notice, his consent or relinquishment are not required. Citing to *Lehr*, we held in *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d 740 (1996), that §§ 43-104.02 and 43-104.04 did not violate due process as applied.

In *Friehe*, the putative father, after learning of the child's birth, infrequently visited the child at the hospital. The father agreed to place the child in temporary foster care and did not file a notice of intent to claim paternity within the 5-day time period required by § 43-104.05. The putative father argued that §§ 43-104.02 and 43-104.04 unconstitutionally violated his rights to due process and equal protection. We noted that the liberty interest at stake did not involve the termination of established custodial rights. Instead, the interest involved was a putative father's opportunity to potentially form a familial bond with his child. We then specifically noted the reasoning of the U.S. Supreme Court in *Lehr* as follows: " 'The Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights.' " 249 Neb. at 836, 545 N.W.2d at 748, quoting *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983). We held that the putative father had it within his own power to assert his rights and obtain an opportunity to be heard by filing a notice of intent to claim paternity. Because it was his own failure to act upon the notice given to him of the child's birth, we determined that his due process claim was without merit.

Armour did not have an established familial relationship with the child guaranteeing him due process protection. Armour never saw the child and did not assist in paying for the child's birth or in supporting the child. Armour did, however, timely file a notice of intent to claim paternity pursuant to § 43-104.02, in which he acknowledged his obligation to pay support. Armour later failed to timely file a petition for adjudication of paternity under § 43-104.05 because his attorney filed the first petition in the wrong court. A motion for visitation was also filed in the wrong court. The question is whether Armour has sufficiently

grasped his opportunity interest in a relationship with his child requiring further notice of adoption proceedings and an opportunity to be heard under the Due Process Clauses of the U.S. and Nebraska Constitutions.

In accordance with *Lehr*, when Armour failed to file a petition for adjudication of paternity under § 43-104.05, Armour and his attorney were presumed to know the law. Indeed, Armour's notice of intent to claim paternity, filed under § 43-104.02, stated that he understood that he must file a petition for adjudication of paternity in the county court within 30 days. That the error of filing in the wrong court was made by Armour's attorney does not change the analysis. As *Lehr* makes clear, the issue is whether the state has adequately protected the putative father's opportunity interest. The failure to properly follow § 43-104.05 because of ignorance of the law can not be a sufficient reason for criticizing the law itself. As we indicated in *Friehe*, Armour is presumptively capable of asserting and protecting his own rights. Further, after our decision in *Armour v. L.H.*, 259 Neb. 138, 608 N.W.2d 599 (2000), Armour failed to make any further attempts to comply with § 43-104.05. As a result, Armour failed to ever file a petition for adjudication of paternity in county court. We determine that it was not impossible for Armour to properly comply with § 43-104.05 and that he was not denied any reasonable opportunity to do so. The statutes at issue adequately protected Armour's opportunity to form a relationship with his child. We determine that Armour did not sufficiently grasp his opportunity interest and that the application of §§ 43-104.05 and 43-104.22 to Armour's case did not deprive him of due process.

## FACIAL CONSTITUTIONALITY OF § 43-104.05

Armour next contends that the adoption statutes facially violate the U.S. and Nebraska Constitutions. Armour argues that the 30-day filing requirement of § 43-104.05 arbitrarily acts to terminate parental rights in violation of his right to substantive due process.

Substantive due process relates to the content of the statute specifying when a right can be lost or impaired. See *Wells v. Children's Aid Soc. of Utah*, 681 P.2d 199 (Utah 1984). The U.S. Supreme Court has stated that the 14th Amendment

forbids the government from infringing upon a fundamental liberty interest, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. See *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).

Applying the reasoning of *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983), the Utah Supreme Court has held that an adoption statute that required a notice of paternity to be filed in order to preserve parental rights did not facially violate substantive due process. *Wells, supra.* The court in *Wells* reasoned that parental rights are not absolute and that the state has a compelling interest in speedily identifying those persons who will assume a parental role over illegitimate newborn children. The court further noted that for the statute to serve its purpose for the welfare of the child, a determination that a child can be adopted must be final and immediate. *Id.*

■ We hold that the 30-day filing requirement of § 43-104.05 does not facially violate substantive due process. The 30-day requirement does not arbitrarily act to terminate a putative father's parental rights. Rather, the requirement provides the father with a period of time in which to assert his rights. If the father fails to do so, the statute then serves the compelling state interest of immediately placing the child with people who will assume a parental role for the child.

■ Armour next contends that the adoption statutes—in particular § 43-104.05—facially violate equal protection because the statutes treat biological mothers and fathers differently. Under principles of equal protection, the government may not subject men and women to disparate treatment when there is no substantial relation between the disparity and an important state interest. *Lehr, supra.*

We have stated that the 5-day filing requirement of § 43-104.02, although treating mothers and fathers differently, enables a speedy determination of the rights of the father so as to make it possible for the state to achieve a legitimate end, which is the placement of children as soon after birth as possible. *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987). See, also, *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d

740 (1996) (interpreting *In re Application of S.R.S. and M.B.S.* as upholding the facial constitutionality of adoption statutes).

█ The immediate secure adoption of children is an important state interest. We determine that the adoption statutes serve an important state interest and that any disparity of treatment in those statutes are substantially related to that interest. Accordingly, we determine that the adoption statutes do not facially violate equal protection.

## NOTICE

Armour next contends that § 43-104.13 is facially unconstitutional because it fails to require that notice be given to a putative father that he must file a petition for adjudication of paternity within 30 days. Armour claims that this failure violates principles of procedural due process.

Section 43-104.08 provides:

> Whenever a child is claimed to be born out of wedlock and the biological mother contacts an adoption agency or attorney to relinquish her rights to the child . . . the agency or attorney contacted shall attempt to establish the identity of the biological father and further attempt to inform the biological father of his right to execute a relinquishment and consent to adoption, or a denial of paternity and waiver of rights . . . .

Section 43-104.12 requires that an agency or attorney shall notify by registered mail, return receipt requested, any person who has been identified as the biological father or possible biological father by the child's mother. Section 43-104.13 provides a list of information and rights of which a possible biological father must be notified.

█ Procedural due process limits the ability of the government to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. *Benitez v. Rasmussen*, 261 Neb. 806, 626 N.W.2d 209 (2001).

█ Although § 43-104.13 does not require that a putative father be given notice that he must file a petition for adjudication within 30 days of filing his notice of intent to claim paternity,

§ 43-104.13 does advise the father to seek legal counsel immediately if he desires to seek custody of his child. Further, § 43-104.05 provides notice that a petition for adjudication must be filed within 30 days of the date the notice of intent to claim paternity was filed. If § 43-104.05 is followed, the father is afforded full notice of the adoption proceedings and an opportunity to be heard. It was not the content of the adoption statutes that deprived Armour of notice in the adoption proceedings. Instead, Armour's own failure to properly follow statutory procedure deprived him of notice in the adoption proceedings. We determine that § 43-104.13 is facially constitutional.

Armour next contends that the requirements of the notice statute, § 43-104.13, were not met. The letter Armour received from Lutheran Family Services was sent by registered mail with a return receipt requested. The letter informed Armour of his rights as set forth in § 43-104.13. Having reviewed the letter, we determine that it was sent in compliance with the notice statutes.

Armour next contends that the notice requirements of § 43-104.13 deprived him of due process and equal protection because Armour was a minor when he received notice of the child's birth. The stated purpose of § 43-104.13 is to provide notice to allow compliance with § 43-104.02. That section requires a putative father to file a notice of intent to claim paternity in order to preserve his rights. Armour received notice of the birth and acted on that notice by filing a notice of intent to claim paternity pursuant to § 43-104.02. Therefore, Armour was not deprived of any benefit intended by the statute. Nothing in the notice statutes requires notice to be served on the parents of a minor. Armour does not cite to any precedent for his argument that § 43-104.02 as applied to him violated his rights to due process or equal protection, nor can we find any precedent to support his argument. We conclude that this assignment of error is without merit.

### REMAINING ASSIGNMENTS OF ERROR

Armour assigns that the county court erred in entering a decree of adoption based on what he contends were errors made by the court in the final adoption hearing and decree. K.D.G. and T.S.G. argue that Armour lacks standing to raise these issues.

■ In order to have standing, a litigant must assert the litigant's own legal rights and interests, and cannot rest his or her claim on the legal rights or interests of third parties. *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000); *In re Interest of Alycia P.*, 258 Neb. 258, 603 N.W.2d 7 (1999). The issues regarding the final adoption hearing and decree arose out of proceedings that Armour was not a party to and was not required to be given notice of. Armour is attempting to assert the legal interests of third parties. Because Armour lacks standing, we do not address his remaining assignments of error.

## CONCLUSION

We determine that the adoption statutes at issue are not unconstitutional, either facially or as applied to Armour. We further conclude that the county court did not err in determining that Armour was not entitled to further notice in the adoption proceedings for Baby Girl H. We do not address Armour's remaining assignments of error due to Armour's lack of standing to assert the errors. Accordingly, we affirm.

AFFIRMED.

STEPHAN, J., not participating.