MARIE A. CRABB, APPELLANT, V.
BISHOP CLARKSON MEMORIAL HOSPITAL, APPELLEE.
591 N.W. 2d 756

Filed April 2, 1999. No. S-98-798.

Marie A. (Crabb) Stevens, pro se.

Robert D. Mullin, Jr., of McGrath, North, Mullin & Kratz, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE
On remand, a single judge (trial court) of the Nebraska Workers' Compensation Court concluded that there was no legal or factual basis to set aside the trial court's prior order of dismissal. As a result, the petition filed by Marie A. Crabb was dismissed, and Crabb appeals.

## SCOPE OF REVIEW
Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Bonge v. County of Madison*, 253 Neb. 903, 573 N.W.2d 448 (1998).

## FACTS
On January 2, 1990, Crabb was employed by Bishop Clarkson Memorial Hospital (Hospital) when she suffered a needle-stick injury during the course of her employment. In May 1992, while in the process of donating her own blood for use in a later surgery, Crabb learned that she had hepatitis C. On January 15, 1993, Crabb filed an application for workers' compensation benefits, alleging that the needle-stick injury in 1990 caused her to contract hepatitis C.

At trial, Crabb testified that the needle with which she was stuck was not one she had been using on a patient. She asserted

that the needle had been placed on her work tray by someone else and that she had no way of knowing where the needle came from or on which patient the needle had previously been used.

At the time of the needle stick, Crabb was working on the dialysis-transplant floor of the Hospital. She administered first aid to herself and reported the incident to her supervisor. A test of Crabb's blood done at that time showed she was negative for HIV. There was no test available in January 1990 for a hepatitis C infection.

Dr. Thomas J. Safranek, state epidemiologist for the Nebraska Department of Health, testified on behalf of the Hospital. Safranek identified various risk factors associated with contracting hepatitis C. He stated that the most overwhelming risk factor for hepatitis C is blood transfusions but that other risk categories include intravenous drug use; multiplicity of sexual partners; living in a household with an individual who has hepatitis C; and occupational risks assumed by medical professionals, including dentists, surgeons, and hemodialysis nurses. He also noted that it was documented in the medical literature that transmission of hepatitis C could occur through being tattooed, as well as through other types of percutaneous exposure. Safranek stated that once contracted, the hepatitis C infection can remain undetected for a long period of time.

Crabb's medical expert, Dr. Michael F. Sorrell, testified by deposition that hepatitis C was primarily transmitted by blood transfusions, blood products, intravenous drug use, and needle sticks. He further stated that there are a number of patients with what are called community-acquired infections, in which the cause of transmission is unknown.

At trial, Crabb denied having blood transfusions at any time in her life. However, records from Ehrling Bergquist Strategic Hospital at Offutt Air Force Base showed that Dr. Edwin C. Schafer had recorded the following on Crabb's medical history: "She has had multiple head traumas, multiple surgeries for lacerations etc. She had major transfusions in 1975 in Chicago." In addition, a July 1992 medical report written by Dr. Jeremiah P. Donovan, medical director of hepatic transplantation at the University of Nebraska Medical Center (UNMC), referred

repeatedly to prior transfusions: "[S]he had a dogbite at age 2; her scalp bled fairly profusely (and was transfused.) She had blood transfusions again over 20 years ago. She has undergone a blood transfusion as recently as 1992 when she had a total vaginal hysterectomy along with a PREYRA erythroplexy [sic]." Schafer's and Donovan's overall impressions were that Crabb had chronic hepatitis C and that there were multiple reasons why she might have developed hepatitis C. Both doctors noted that Crabb had received multiple blood transfusions at times when many of the screening tests for hepatitis C were not available.

The evidence at trial also showed that Crabb had liver tests on June 7, 1982, and March 9, 1989, both prior to the needle stick, which tests showed abnormal liver function. Safranek stated that abnormal liver tests could denote prior liver disease, including a chronic hepatitis C infection. Crabb also admitted she had two tattoos. One was done in 1979 in Denver, and the other was done in 1980 in California. However, Crabb testified that each had been done in a "clean environment."

Safranek testified that based upon his review of the evidence and the literature about hepatitis C, he was unable to determine within a reasonable degree of medical certainty when Crabb acquired hepatitis C. He stated that his review of Crabb's medical records from 1982 to 1989 showed abnormal liver function tests

> in a consistent fashion without major fluctuations for approximately an eight-year period prior to the needle stick episode. The two times they were tested prior to the needle stick indicated abnormal liver function.
>
> . . . .
>
> . . . It suggested to me whatever had been going on had been going on for a number of years . . . .

Safranek was uncertain whether it was more probable than not that Crabb would have contracted hepatitis C prior to the date of the needle-stick injury. He opined that there were multiple opportunities throughout Crabb's life when she could have contracted hepatitis C and that it was impossible to say when it occurred.

Sorrell initially opined that Crabb's hepatitis C was contracted prior to the needle-stick injury. He later reversed this

opinion, stating that he had based his original opinion on the fact that Crabb's liver function tests prior to the time of the needle-stick injury were abnormal. He stated that the elevated liver enzyme reading from 1989 could have been caused by a medication prescribed for Crabb at that time for musculoskeletal complaints. Sorrell opined with a reasonable degree of medical probability that Crabb did contract hepatitis C after an inadvertent needle stick while working in the renal dialysis unit at the Hospital in 1990.

The trial court dismissed Crabb's petition because she failed to prove that the needle-stick injury caused her to contract hepatitis C, and the dismissal was affirmed by a three-judge review panel of the Workers' Compensation Court. Crabb appealed to the Nebraska Court of Appeals, which affirmed, and her subsequent motion for rehearing was overruled. This court denied Crabb's petitions for further review on November 22, 1995.

On July 5, 1996, Crabb filed another petition, claiming that the trial court's prior ruling was tainted by fraud. This second petition was filed with the same docket number as the first case. The Hospital moved to dismiss the second petition on the basis that it was barred by res judicata and that the trial court did not have jurisdiction to modify the prior dismissal. The trial court granted the motion to dismiss, and Crabb sought review by a three-judge review panel. The review panel reversed the dismissal because it concluded the trial court did not have the authority to grant a motion for summary judgment or to otherwise grant a judgment on the pleadings.

On remand from the three-judge review panel, the trial court found that the second petition recited the same allegations set forth in the first petition and, in addition, alleged that the trial court's prior ruling was tainted by fraud. Crabb's allegations of fraud were: (1) The medical notes of Donovan, of UNMC, were inserted into exhibit 16T at the original trial as part of the records of Ehrling Bergquist Strategic Hospital, rather than being included in the UNMC records which were offered; (2) Crabb's dental records were not included in the medical file that the Hospital submitted to the trial court as Crabb's entire Air Force medical record; (3) not all of Crabb's medical records were given by the Hospital's counsel to the Hospital's medical

expert, Safranek, to review for purposes of his medical causation opinion; and (4) the Hospital's counsel allegedly made untrue statements in his "trial brief/closing arguments" without knowledge of their truth or falsity.

Crabb's chief complaint involved whether she had blood transfusions prior to the time of the needle-stick injury. The trial court noted that Crabb adamantly denied ever having a blood transfusion and that Crabb had deposed Schafer to determine where Schafer obtained the medical history of Crabb's blood transfusions. In his deposition, Schafer stated that such history had been obtained from Crabb at the time Schafer interviewed her. Schafer explained that at the time of the interview, detailed handwritten notes were taken, and that after the interview was finished, a history was dictated and the handwritten notes were destroyed.

In dismissing the petition, the trial court stated that assuming it had subject matter jurisdiction to reopen the case, no factual or legal basis existed to set aside the trial court's prior order of dismissal. Crabb again filed an application for review, and the dismissal was affirmed by a three-judge review panel. Crabb filed a timely notice of appeal to the Court of Appeals, and pursuant to our power to regulate the caseloads of the appellate courts of this state, we moved the case to our docket.

## ASSIGNMENT OF ERROR

In summary, Crabb alleges that the trial court and the review panel erred by failing to set aside the trial court's prior order of dismissal.

## ANALYSIS

Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997). Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996). The absence of subject matter jurisdiction may be raised

at any time by any party or by the court sua sponte. *County of Sherman v. Evans*, 252 Neb. 612, 564 N.W.2d 256 (1997).

In the Hospital's objection to Crabb's second petition, the Hospital questioned the trial court's jurisdiction to modify or vacate its prior order on the basis of fraud. We have repeatedly held that while it is true that in civil cases a court of general jurisdiction has inherent power to vacate or modify its own judgment during the term in which it was rendered, that rule does not apply to statutory tribunals such as the Workers' Compensation Court, for it is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute. *Thach v. Quality Pork International*, 253 Neb. 544, 570 N.W.2d 830 (1997). The Workers' Compensation Court's powers are properly limited to those delineated by statute. *Buckingham v. Creighton University*, 248 Neb. 821, 539 N.W.2d 646 (1995).

The Nebraska Workers' Compensation Act (Act) provides for modification of awards, but only in limited circumstances. Neb. Rev. Stat. § 48-170 (Reissue 1998) provides: "Every order and award of a single judge of the Nebraska Workers' Compensation Court shall be binding upon each party at interest unless an application for review has been filed with the compensation court within fourteen days following the date of rendition of the order or award." Neb. Rev. Stat. § 48-180 (Reissue 1998) provides in part:

> The Nebraska Workers' Compensation Court may, on its own motion, modify or change its findings, order, award, or judgment at any time before appeal and within ten days from the date of such findings, order, award, or judgment for the purpose of correcting any ambiguity, clerical error, or patent or obvious error.

In *Thach, supra,* we addressed whether the Workers' Compensation Court's order could be modified after the court's term had ended. We concluded that based on §§ 48-170 and 48-180, if the court failed to modify its order within 10 days and the parties failed to file an application within 14 days of the original order, such order became final and binding upon the parties, and that any attempt to modify the award after these dates was beyond the statutory power of the court. We stated

that the court had clearly acted in excess of its statutorily granted powers when it modified an order after term, because it was readily apparent from a plain reading of the Act that the single judge had no authority to modify the original award after the running of the statutory time period. Since the original order of the court was final, res judicata applied to the issues involved, and the later modification was a nullity.

In *Dougherty v. Swift-Eckrich*, 251 Neb. 333, 557 N.W.2d 31 (1996), an award for an injured employee was entered on February 24, 1993. The employee filed a "petition" in the same case in October 1994, seeking to extend the completion date of the February award. The court entered an award in March 1995, extending the completion date to December 22, 1994, and the employer timely appealed. We noted that while a court of general jurisdiction has the inherent power to vacate or modify its own judgment during the term in which it was rendered, that rule does not apply to statutory tribunals such as the compensation court, which are courts of limited and special jurisdiction and have only such authority as has been conferred by statute. We did not permit the employee's attempt to correct an error in the February 1993 award, which had become final, finding that there was no statutory empowerment of the court to do so.

In *Ira v. Swift-Eckrich*, 251 Neb. 411, 558 N.W.2d 40 (1997), an employee received an award, and more than 3 years later, another award was made in the same action which modified the original award and obligated the former employer for the duration of a vocational rehabilitation plan. Nearly 2 years after the modification, the court entered another order upon petition by the former employee. The employer appealed, alleging lack of jurisdiction to alter the prior award. Relying upon *Dougherty, supra*, we reversed on the basis that the Workers' Compensation Court was not authorized to alter the prior award.

The Workers' Compensation Court is empowered to modify an award only by those means specifically delineated in the Act. Any action which is not authorized by statute is beyond the court's authority. Crabb asked the trial court to vacate its prior ruling almost 8 months after the ruling had become final. The request did not fall within the limited grounds for vacating or modifying an award provided for in §§ 48-170 and 48-180 and

Neb. Rev. Stat. § 48-141 (Reissue 1998) and, therefore, was not authorized by statute.

As part of our review on the issue of jurisdiction, we consider the order of the three-judge review panel dated January 15, 1997. As part of Crabb's application for review of the dismissal of her July 1996 petition, Crabb alleged that the trial court had no authority to grant a motion for summary judgment. The review panel agreed and, relying upon our opinion in *Buckingham v. Creighton University*, 248 Neb. 821, 539 N.W.2d 646 (1995), reversed the dismissal and remanded the cause for a hearing on the merits.

In *Buckingham*, we stated: "As a statutorily created court, the compensation court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute." 248 Neb. at 824, 539 N.W.2d at 649. We also stated that while the county and district courts are given specific authorization to use summary judgment procedures, no provision is made for the procedure in the Workers' Compensation Court.

We point out that inherent within the Workers' Compensation Court's exercise of its limited powers is the power to determine whether it has jurisdiction over the matter before it. A determination by the trial court that it lacks jurisdiction, thereby summarily dismissing a case, is a summary proceeding within the inherent power of the Workers' Compensation Court.

A distinction is made between a summary determination of the merits of an action and a summary determination regarding jurisdiction made by the Workers' Compensation Court. Parties cannot confer jurisdiction where none exists, and the courts of this state may determine the issue of jurisdiction sua sponte.

## CONCLUSION

In its order of August 21, 1996, the trial court correctly determined that it lacked jurisdiction and dismissed Crabb's July 5, 1996, petition. When a lower court does not gain jurisdiction over the case before it, an appellate court also lacks the jurisdiction to review the merits of the claim. *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998). Thus, we also dismiss the appeal for lack of jurisdiction.

APPEAL DISMISSED.

STEPHAN, J., not participating.