LUKE ARMOUR, APPELLANT, V. L.H., APPELLEE.

608 N.W. 2d 599

Filed April 7, 2000.   No. S-98-1232.

Robert E. Wheeler for appellant.

Susan K. Sapp, of Cline, Williams, Johnson, Wright & Oldfather, for appellee.

Sally A. Rasmussen, of Mousel, Garner & Rasmussen, for K.D.G. and T.S.G.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Luke Armour appeals from an order of the district court for Gosper County, Nebraska, dismissing his petition filed pursuant to Neb. Rev. Stat. § 43-104.05 (Reissue 1998) by which he sought an adjudication of paternity and custody of a child born out of wedlock. We agree with the determination of the district court that it lacked subject matter jurisdiction and, therefore, conclude that the appeal must be dismissed.

## BACKGROUND

In his petition filed August 21, 1998, Armour specifically alleged that this action was brought "for adjudication of claim of paternity and right of custody pursuant to Neb. Rev. Stat. § 43-104.05." He alleged that he is a resident of Arcadia, Nebraska, and that in the fall of 1997, he had sexual intercourse with L.H., who became pregnant and gave birth to a female infant on July 22, 1998. Armour alleged that he first learned of the possibility that he might be the father of the child from a telephone call he received from L.H. in late June 1998. Armour further alleged that upon being notified by Lutheran Family Services of the birth of the child and his right to claim paternity and custody, he filed a "Notice of Intent to Claim Paternity and Obtain Custody" with the Nebraska Department of Health and Human Services (DHHS) on August 4, 1998. Armour further alleged in his petition that if he is found to be the father of the child, he "acknowledges liability for contribution to the support and education of the child and for contribution to the pregnancy-related medical expenses of the mother" and further assumed liability for genetic testing with respect to the determination of paternity. He alleged that if paternity is established, he desires custody of the child; that he is a fit and proper person to have custody; and that placing the child in his custody would be in the child's best interests. In the prayer of his petition, Armour sought a temporary visitation order, genetic testing to determine paternity, adjudication of paternity and right to custody, and appointment of a guardian ad litem for the child. The petition concluded with a request "that this matter be heard by the District Court Judge."

In response to the petition, L.H. filed a demurrer asserting that the district court lacked subject matter jurisdiction. On October 2,

1998, K.D.G. and T.S.G. filed a "Motion for Leave to Intervene, or in the Alternative, Motion for Leave To Be Joined as Parties Defendant and Notice of Hearing." In this motion, K.D.G. and T.S.G. alleged that they are the "prospective adoptive parents" of the child, who had been in their care and custody since July 29, 1998. They alleged that if permitted to intervene, they would file a demurrer attached to the motion, which asserted a lack of subject matter jurisdiction, the incapacity of the parties, and the failure to state facts sufficient to constitute a cause of action.

On October 6, 1998, the district court conducted a telephonic hearing in which counsel for Armour, L.H., and K.D.G. and T.S.G. appeared and participated. The court heard argument on the demurrer of L.H. and took the matter under advisement. In an order filed November 16, the district court determined that it lacked subject matter jurisdiction and therefore sustained the demurrer of L.H., made no ruling on K.D.G. and T.S.G.'s motion for leave to intervene, and dismissed the action. The court reasoned that the petition on its face sought to invoke jurisdiction under § 43-104.05, which the court determined to be a part of the Nebraska statutes dealing with adoption over which the county courts and separate juvenile courts have exclusive jurisdiction. Armour perfected this appeal, which we moved to our docket pursuant to our responsibility to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

Armour assigns that the district court erred in holding that it did not have jurisdiction over the action.

## STANDARD OF REVIEW

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *US Ecology v. State*, 258 Neb. 10, 601 N.W.2d 775 (1999); *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999).

## ANALYSIS

■ In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as

alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn.*, 258 Neb. 690, 605 N.W.2d 803 (2000); *Zoucha v. Henn*, 258 Neb. 611, 604 N.W.2d 828 (2000). Thus, in reviewing the order of the district court sustaining the demurrer and dismissing the action, we must assume the truth of Armour's allegations that he may be the biological father of a child born out of wedlock; that he received notice of the birth of the child and his right to claim paternity and custody; and that upon receipt of such notice, he filed a notice of intent to claim paternity and custody with DHHS.

In seeking an adjudication of paternity, Armour specifically invokes § 43-104.05. The issue of law which we must decide is whether this is a general action for paternity, over which the district court has subject matter jurisdiction or, as the district court determined, an adoption matter over which either a county court or a separate juvenile court has exclusive original jurisdiction. See Neb. Rev. Stat. § 24-517(10) (Cum. Supp. 1998). In resolving this question, we are guided by familiar principles of statutory construction. The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999). In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999).

Section 43-104.05 is included within chapter 43, article 1, of the Nebraska Revised Statutes, which is entitled "Adoption Procedures" and encompasses Neb. Rev. Stat. §§ 43-101 through 43-165 (Reissue 1998). Section 43-101 provides that "[e]xcept as otherwise provided in the Nebraska Indian Child Welfare Act, any minor child may be adopted by any adult person . . . subject to the rules prescribed in sections 43-101 to

43-115 . . . ." Prior to July 1, 1998, county courts in Nebraska had "[e]xclusive original jurisdiction in all matters of adoption." § 24-517(9) (Supp. 1997). Effective July 1, 1998, § 24-517 was amended to provide that county courts had "[e]xclusive original jurisdiction in matters of adoption, except if a separate juvenile court already has jurisdiction over the child to be adopted, concurrent original jurisdiction with the separate juvenile court." § 24-517(10) (Cum. Supp. 1998).

With the exception of § 43-104.07, §§ 43-104.01 through 43-104.24 deal specifically with children born out of wedlock. Section 43-104.09 requires that "[i]n all cases of adoption of a minor child born out of wedlock," the biological mother, or if she is under the age of 19 the agency or attorney representing her, must execute an affidavit identifying the biological father or persons who are possible biological fathers, or must state specific reasons why she is unable or unwilling to do so. Persons so identified are entitled to written notice advising them of the pregnancy or birth and anticipated relinquishment for adoption and certain other information, including the right of the biological father to file a notice of intent to claim paternity and obtain custody of the child. See §§ 43-104.12 and 43-104.13. Such notice of intent must be filed in the biological father registry, established and maintained by DHHS pursuant to § 43-104.01, within specified timeframes from the date of notice or the birth of the child, whichever is later. § 43-104.02.

When Armour's petition was filed on August 21, 1998, § 43-104.05 provided:

> If a notice of intent to claim paternity and obtain custody is timely filed with the biological father registry pursuant to section 43-104.02, either the claimant-father, the mother, or her agent specifically designated in writing shall, within thirty days after filing the notice, file a petition in the court in the county where such child is a resident for an adjudication of the claim of paternity and right to custody. If such a petition is not filed within thirty days after filing the notice, the claimant-father's consent to adoption of the child shall not be required and any alleged parental rights of the claimant-father shall not be recognized thereafter in any court. After the filing of such peti-

tion, the court shall set a hearing date upon proper notice to the parties not less than ten nor more than twenty days after such filing. If the mother contests the claim of paternity, the court shall take such testimony as shall enable it to determine the facts. The claimant-father's rights and the custody of the child shall be determined pursuant to section 43-104.22. The court shall appoint a guardian ad litem to represent the best interests of the child.

We note that prior to July 1, 1998, § 43-104.05 (Cum. Supp. 1996) provided that a petition for seeking adjudication of paternity filed pursuant thereto was to be filed "in the county court in the county where such child is a resident." This language was amended to that contained in the statute at the time of Armour's filing by the same 1998 legislation which conferred concurrent original jurisdiction over adoption matters to a separate juvenile court having custody of the child to be adopted. See 1998 Neb. Laws, L.B. 1041. In this same legislation, the Legislature also conferred concurrent jurisdiction upon the county, district, and separate juvenile courts with respect to "paternity determinations" which were defined as "proceedings to establish the paternity of a child under sections 43-1411 to 43-1418." Neb. Rev. Stat. § 25-2740(1)(b) (Cum. Supp. 1998). See, also, § 24-517(7). In 1999, the Legislature amended § 43-104.05 to provide that a petition for adjudication of paternity filed pursuant thereto must be filed "in the county court in the county where such child was born or, if a separate juvenile court already has jurisdiction over the child, in such separate juvenile court." § 43-104.05 (Supp. 1999). See, also, 1999 Neb. Laws, L.B. 594.

■ Although Armour characterizes § 43-104.05 as "part of the adoption statutes concerning the rights of fathers," he argues that it is merely a statute of limitations which "requires that the claimant-father file [an] action to determine his claim of paternity within 30 days of filing the notice claiming paternity, or lose recognition of his rights." Brief for appellant at 6. Notably, Armour's petition does not invoke Neb. Rev. Stat. § 43-1411 (Reissue 1998), which provides in pertinent part:

A civil proceeding to establish the paternity of a child may be instituted, in the court of the district where the child is domiciled or found . . . by (1) the mother or the

alleged father of such child, either during pregnancy or within four years after the child's birth, *unless consent or relinquishment has been made pursuant to sections 43-104.08 to 43-104.24 or section 43-105 for purposes of adoption . . . .*

(Emphasis supplied.) There is obvious tension between this statutory language and Armour's theory that § 43-104.05 is a statute of limitations applicable to all paternity actions over which the district court has jurisdiction. Were this so, a biological father of a child born out of wedlock would have 4 years in which to commence an action to establish his paternity unless he filed a notice of intent to do so with the biological father registry, in which case the limitations period would be shortened to 30 days from the date of such filing. In construing a statute, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998). We can conceive of no reason why the Legislature would create a procedure whereby the general statute of limitations applicable to paternity actions would be drastically shortened by a biological father's stated intent to bring such an action. Moreover, the last quoted clause of § 43-1411(1) clearly contemplates a different procedure for adjudicating paternity of a child when the biological mother has either consented to or relinquished the child for adoption.

We conclude that § 43-104.05 was intended by the Legislature to constitute such a procedure. Section 43-104.05 specifically requires that "[t]he claimant-father's rights and the custody of the child shall be determined pursuant to section 43-104.22." Section 43-104.22 in turn provides that "[a]t any hearing to determine a biological father's parental rights to the child, the court shall receive evidence with regard to the biological father's actual paternity of the child and whether he is a fit, proper, and suitable custodial parent for the child." Section 43-104.22 further authorizes the court to determine that the biological father's consent is not required for a valid adoption of the child upon a finding of one or more of eight factors, which include the failure to timely file a notice of intent to claim paternity and obtain custody pursuant to § 43-104.02 and the failure

"to timely file a petition to adjudicate his claim of paternity and right to custody as contemplated in section 43-104.05." § 43-104.22(7). The procedure for adjudicating paternity set forth in § 43-104.05 is thus an integral part of the statutory mechanism for the adoption of a child born out of wedlock and is therefore a matter of adoption which falls within the exclusive jurisdiction of the county court or, under certain circumstances, a separate juvenile court. Accordingly, the district courts lack subject matter jurisdiction over a petition to adjudicate paternity brought pursuant to § 43-104.05.

## CONCLUSION

■ Based upon our independent review, we conclude that a petition to adjudicate paternity filed pursuant to § 43-104.05 is a matter of adoption over which the district courts have no subject matter jurisdiction and that, therefore, the district court in the present case did not err in sustaining the demurrer and dismissing the action. When a lower court does not have jurisdiction over the case before it, an appellate court also lacks jurisdiction to review the merits of the claim. *Crabb v. Bishop Clarkson Mem. Hosp.*, 256 Neb. 636, 591 N.W.2d 756 (1999). Accordingly, we dismiss the appeal.

APPEAL DISMISSED.

WRIGHT, J., not participating.