**Marilyn JESSEN, Personally and as Special Administrator of the Estate of Alfred B. Jessen, Deceased, Plaintiff,**

v.

**Rajesh MALHOTRA, Defendant.**

No. 4:00CV0112.

United States District Court,
D. Nebraska.

Sept. 8, 2000.

E. Terry Sibbernsen, Omaha, NE, for Plaintiff.

William L. Tannehill, Corey L. Stull Knudsen, Berkheimer Law Firm, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

This matter is before the court on Defendant's motion for summary judgment (filing 31). Upon careful consideration of the pleadings, filed affidavits, and briefs submitted by the parties,[1] I find that the motion should be granted.

## I. BACKGROUND

This diversity action involves a medical malpractice and wrongful death claim against a physician who was qualified under the Nebraska Hospital–Medical Liability Act, Neb.Rev.Stat. Ann. §§ 44–2801 *et seq.* (Michie 1995), and who was employed by Kearney County, Nebraska. The material facts are undisputed, and the sole issue presented by the motion for summary judgment is whether written notice of the claim was required to be submitted to the county pursuant to the Political Subdivisions Tort Claims Act, Neb.Rev.Stat. Ann. § 13–901 *et seq.* (Michie 1995), as a condition precedent to filing suit.

Dr. Malhotra, the defendant, currently resides in Tulsa, Oklahoma, but from July 8, 1996, through July 7, 1999, he was employed as a physician in Minden, Nebraska, at the county-owned hospital (Kearney County Health Services) and county-owned medical clinic (Kearney County Medical Clinic). The county paid Dr. Malhotra a regular monthly salary and provided him with health, disability, and professional liability insurance and other employee benefits, supplied all necessary staff, facilities, and equipment, and, through the Kearney County Health Services Board of Trustees, exercised supervision and control over his activities. There is no evidence to suggest that Dr. Malhotra was not an "employee of a political subdivision" as defined in the Political Subdivisions Tort Claims Act.[2]

On October 14, 1998, the plaintiff's decedent, Alfred Jessen, presented himself to the Kearney County Medical Clinic, complaining of chest pain, and he was examined by Dr. Malhotra. Mr. Jessen died at home two days later, as the result of a recent myocardial infarction. Plaintiff alleges that Dr. Malhotra was negligent in failing to diagnose and treat Mr. Jessen's condition. The complaint seeks damages for pecuniary loss of the decedent's widow and children, funeral and medical expenses, and pain and suffering by the decedent.

At all times relevant to the complaint, Dr. Malhotra was qualified under the Nebraska Hospital–Medical Liability Act (NHMLA).[3] There is no evidence that Mr. Jessen opted out of the NHMLA, as permitted by Neb.Rev.Stat. Ann. § 44–

---

1. Also before the court is Defendant's motion for leave to file a reply brief and additional supporting evidentiary material (filing 37), which will be granted. The reply brief and additional evidentiary material (filing 38) have been considered by the court in ruling on the motion for summary judgment.

2. Neb.Rev.Stat. Ann. § 13–903(3) (Lexis Supp.1999) provides: "Employee of a political subdivision shall mean any one or more officers or employees of the political subdivision or any agency of the subdivision and shall include members of the governing body, duly appointed members of boards or commissions when they are acting in their official capacity, volunteer firefighters, and volunteer rescue squad personnel. Employee shall not be construed to include any contractor with a political subdivision; ..."

3. A health care provider qualifies under the NHMLA by filing proof of financial responsibility with the Director of Insurance and paying a surcharge for the Excess Liability Fund which is created by the Act. *See* Neb.Rev.Stat. Ann. § 44–2824 (Michie 1995).

2821(2) (Michie 1995), and both parties assert that the Act applies to this action.

By affidavit, Dr. Malhotra has established that he was acting within the course and scope of his employment by Kearney County when he examined Mr. Jessen on October 14, 1998. Plaintiff has presented no contrary evidence. It is also undisputed that no written claim notice was given to Kearney County prior to Plaintiff filing suit.

## II. DISCUSSION

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.), *cert. denied*, 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir.1997), *cert. denied*, 523 U.S. 1004, 118 S.Ct. 1186, 140 L.Ed.2d 316 (1998).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with " 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992), *cert. denied*, 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lob-*

*by, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

### A. Nebraska Hospital–Medical Liability Act

The purpose of the NHMLA is "to serve the public interest by providing an alternative method for determining malpractice claims in order to improve the availability of medical care, to improve its quality and to reduce the cost thereof, and to insure the availability of malpractice insurance coverage at reasonable rates." *See* Neb. Rev.Stat. Ann. § 44–2801(2) (Michie 1995). The Act, among other things, establishes a 2–year statute of limitations, *see* Neb.Rev.

Stat. Ann. § 44–2828 (Michie 1995), places a "cap" on damages, *see* Neb.Rev.Stat. Ann. § 44–2825 (Michie 1995), and provides for medical review panels to review malpractice claims prior to the filing of suit, *see* Neb.Rev.Stat. Ann. § 44–2840 (Michie 1995).[4]

Plaintiff argues that the NHMLA applies in this case to the exclusion of the Political Subdivisions Tort Claims Act, and she relies upon the following language of Neb.Rev.Stat. Ann. § 44–2821(2) (Michie 1995) (emphasis supplied):

> If a health care provider shall qualify under the act, *the patient's exclusive remedy* against the health care provider . . . for alleged malpractice, professional negligence, failure to provide care, breach of contract relating to providing medical care, or other claim based upon failure to obtain informed consent for an operation or treatment shall be as provided in the act unless the patient shall have elected not to come under the provisions of the act.

Although this section only refers to patients' claims, and thus does not necessarily pertain to a wrongful death action, elsewhere the Act provides: "In wrongful death actions, pecuniary loss to a widow or widower, any dependent, or next of kin shall be subject to all of the terms and provisions of sections 44–2801 to 44–2855." *See* Neb.Rev.Stat. Ann. § 44–2819(2) (Michie 1995). *See also Alegent Health Bergan Mercy Medical Center v. Haworth*, 260 Neb. 63, 615 N.W.2d 460 (2000) (holding in a wrongful death action that the special administrator's exclusive remedy against qualified health care providers was that provided by the NHMLA).

4. Section 44–2840(2) of the NHMLA provides that "[n]o action against a health care provider may be commenced in any court of this state before the claimant's proposed petition has been presented to a medical review panel established pursuant to section 44–2841 and an opinion has been rendered by the panel." A claimant, however, may affirmatively waive

## B. Political Subdivisions Tort Claims Act

The purpose of the Political Subdivisions Tort Claims Act is "to provide uniform procedures for the bringing of tort claims against all political subdivisions, whether engaging in governmental or proprietary functions." *See* Neb.Rev.Stat. Ann. § 13–902 (Michie 1995). To this end, the Legislature has declared "that no political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and that no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act," and "that the procedures provided by the act shall be used to the exclusion of all others." *Id.*

The present action against Dr. Malhotra, individually, does not involve a "tort claim" within the meaning of the Act, however. That term is defined in Neb.Rev.Stat. Ann. § 13–903(4) (Lexis Supp.1999), as follows:

> Tort claim shall mean any claim against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage, loss, injury, or death but shall not include any claim accruing before January 1, 1970.

Because Plaintiff's action is not brought against Kearney County, she contends that the Political Subdivisions Tort Claims Act is inapplicable. Under the law which was

the right to a panel review by filing suit and serving a copy of the petition or complaint on the Director of Insurance at the time the action is filed in court. In this case, Plaintiff waived the medical review panel and served a copy of the complaint on the Director when she filed suit on February 22, 2000.

in effect prior to May 13, 1987, her contention would be correct. *See Dieter v. Hand,* 214 Neb. 257, 333 N.W.2d 772, 774 (1983) (holding that the Act did not restrict the bringing of claims against individual employees of a political subdivision for their own negligence). In response to the *Dieter* decision, however, the Nebraska Legislature amended the Act in 1987 (*see* filing 28, exhibit B, certified copy of legislative history to Laws 1987, LB 258) to add a notice requirement and a 2-year statute of limitations with respect to claims made against individual employees.[5] The 1987 amendment, which now appears, in part, as Neb.Rev.Stat. Ann. § 13–920 (Michie 1995), reads as follows:

(1) No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment occurring after May 13, 1987, unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 13–905.[6]

(2) No suit shall be permitted on a claim filed pursuant to this section unless the governing body of the political subdivision has made final disposition of the claim, except that if the governing body does not make final disposition of the claim within six months after the claim is filed, the claimant may, by notice in writing, withdraw the claim from consideration of the governing body and begin suit.

(3) Except as provided in section 13–919, any suit commenced on any claim filed pursuant to this section shall be forever barred unless begun within two years after the claim accrued. The time to begin suit under this section shall be extended for a period of six months (a) from the date of mailing of notice to the claimant by the governing body as to the final disposition of the claim or (b) from the date of withdrawal of the claim from the governing body under this section, if the time to begin suit would otherwise expire before the end of such period.[7]

5. The 1987 amendment also imposed a "cap" on damages that are recoverable against an employee, in the amount of $1 million per person and $5 million per occurrence. *See* Neb.Rev.Stat. Ann. § 13–922 (Michie 1995). The same dollar limitations generally apply to tort claims brought against political subdivisions. *See* Neb.Rev.Stat. Ann. § 13–926 (Lexis 1999).

6. Neb.Rev.Stat. Ann. § 13–905 (Lexis Supp. 1999) provides:

All tort claims under the Political Subdivisions Tort Claims Act and sections 16–727, 16–728, 23–175, 39–809, and 79–610 shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision. It shall be the duty of the official with whom the claim is filed to present the claim to the governing body. All such claims shall be in writing and shall set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant.

7. Neb.Rev.Stat. Ann. § 13–919 (Michie 1995), provides:

(1) Every claim against a political subdivision permitted under the Political Subdivisions Tort Claims Act shall be forever barred unless within one year after such claim accrued the claim is made in writing to the governing body. Except as otherwise provided in this section, all suits permitted by the act shall be forever barred unless begun within two years after such claim accrued. The time to begin a suit shall be extended for a period of six months from the date of mailing of notice to the claimant by the governing body as to the final disposition of the claim or from the date of withdrawal of the claim from the governing body under section 13–906 if the time to begin suit would otherwise expire before the end of such period.

(2) If a claim is made or filed under any other law of this state and a determination is made by a political subdivision or court that the act provides the exclusive remedy

## C. Applicability of Section 13–920 to NHMLA Claim

The effect of Section 13–920 is to grant qualified immunity to an employee of a political subdivision. *See Kuchar v. Krings*, 248 Neb. 995, 1002, 540 N.W.2d 582, 587 (1995) (upholding constitutionality of statute). "Statutes which effect a change in common law or take away a common-law right should be strictly construed, and a construction which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it." *Lackman v. Rousselle*, 257 Neb. 87, 96, 596 N.W.2d 15, 22 (1999). Under the plain wording of Section 13–920, written notice must be given to the political subdivision of all claims "for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the [political subdivision's] employee while acting in the scope of his or her office or employment." Therefore, unless some other statutory provision restricts the operation of Section 13–920, Plaintiff was required to give written notice of the malpractice and wrongful death claims to Kearney County within one year after such claims accrued.

Other than the language of Section 44–2821(2), providing that the NHMLA shall be the patient's exclusive remedy against a qualified health care provider, there is no indication in statute that the Political Subdivisions Tort Claims Act does not apply to claims that are within the scope of the NHMLA. To the contrary, there is an express statement in Section 13–919(4) that the Political Subdivisions Tort Claims Act does apply to such claims. Thus, the Nebraska Legislature has specifically provided that if a claim is brought under the NHMLA, the filing of a request for review under Section 44–2840 may extend the time to begin suit under the Political Subdivisions Tort Claims Act.[8] This provision is incorporated by direct reference into subsection (3) of Section 13–920.

The fundamental rule in construing statutes is that they shall be construed in pari materia and from their language as a whole to determine the intent of the Legislature. *Hoiengs v. County of Adams*, 254 Neb. 64, 71, 574 N.W.2d 498, 503 (1998). Where it is possible to harmonize apparently conflicting statutes, such is to be done. *Id.* Also, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature

for the claim, the time to make a claim and to begin suit under the act shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by the political subdivision if the time to make the claim and to begin suit under the act would otherwise expire before the end of such period. The time to begin suit may be further extended as provided in subsection (1) of this section.

(3) If a claim is made or a suit is begun under the act and a determination is made by the political subdivision or by the court that the claim or suit is not permitted under the act for any other reason than lapse of time, the time to make a claim or to begin a suit under any other applicable law of this state shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by the political subdivision if the time to make the claim or begin the suit under such other law would otherwise expire before the end of such period.

(4) If a claim is brought under the Nebraska Hospital–Medical Liability Act, the filing of a request for review under section 44–2840 shall extend the time to begin suit under the Political Subdivisions Tort Claims Act an additional ninety days following the issuance of the opinion by the medical review panel if the time to begin suit under the Political Subdivisions Tort Claims Act would otherwise expire before the end of such ninety-day period.

(5) This section and section 25–213 shall be the only statutes of limitations applicable to tort claims as defined in the act.

8. A comparable provision is contained in the State Tort Claims Act. *See* Neb.Rev.Stat. Ann. § 81–8,227(3) (Lexis 1999).

so that different provisions of the act are consistent, harmonious, and sensible. *Armour v. L.H.*, 259 Neb. 138, 141, 608 N.W.2d 599, 602 (2000). In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *Id.*

In this instance, there is no statutory conflict. The notice requirement of Section 13–920, which is intended to provide the political subdivision with an opportunity to investigate the claim prior to the commencement of litigation, *see Keating v. Wiese*, 1 Neb.App. 865, 510 N.W.2d 433, 438 (1993), has no counterpart in the NHMLA. Plaintiff's argument that Section 44–2828 of the NHMLA is a special statute of limitations which takes precedence over Section 13–920 is therefore misplaced. Moreover, it is wrong. The language of Section 13–919(4) clearly indicates that "the time to begin suit under the Political Subdivisions Tort Claims Act" is applicable even "[i]f a claim is brought under the Nebraska Hospital–Medical Liability Act."

### III. CONCLUSION

Although Dr. Malhotra was sued in his individual capacity, he has alleged and proven that he was acting within the scope of his employment by Kearney County at the time of the alleged malpractice. Consequently, Plaintiff had to comply with the requisites set out in the Political Subdivisions Tort Claims Act when filing suit. *See Bohl v. Buffalo County*, 251 Neb. 492, 499, 557 N.W.2d 668, 673 (1997) (granting summary judgment to deputy sheriff sued in his individual capacity where plaintiff failed to comply with Political Subdivisions Tort Claims Act). In this regard, at least, the Political Subdivisions Tort Claims Act is Plaintiff's exclusive remedy for Dr. Malhotra's alleged wrongdoing, and she was required to submit a written claim to the county before commencing this suit. Because she failed to do so, Defendant's motion for summary judgment will be granted, and the action will be dismissed without prejudice. I make no determination as to whether Plaintiff is entitled to an extension of time in which to make a claim under Section 13–919(2).

Accordingly,

IT IS ORDERED:

(1) Defendant's motion for leave to file a reply brief and additional supporting evidentiary material (filing 37) is granted instanter; and

(2) Defendant's motion for summary judgment (filing 31) is granted, and Plaintiff's action is dismissed without prejudice.